```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CIT BANK, N.A.,

                        Plaintiff,                              REPORT AND
                                                                RECOMMENDATION
        -against-                                               CV 16-3586 (ADS)(AYS)

JAMES J. FINLEY, KATHLEEN A.
FINLEY, CLERK OF THE SUFFOLK
COUNTY DISTRICT COURT,

                        Defendants.
------------------------------------------------------------------X
```
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Arthur D. Spatt for Report and Recommendation, is CIT Bank, N.A.'s ("Plaintiff" or "CIT Bank") motion for summary judgment. (Docket Entry ("DE") [45].) By way of a Complaint filed on June 29, 2016, Plaintiff commenced this foreclosure action against Defendants James Finley, Kathleen Finley (the "Finleys"), and the Clerk of the Suffolk County District Court (collectively, "Defendants"), seeking, among other things, to foreclose on a mortgage encumbering the real property located at 320 Atlantic Avenue in Bay Shore, New York (the "Property"). (Compl., DE [1].) The Finleys appeared pro se and filed their Answer on July 22, 2016. (DE [9].) Defendant Clerk of the Suffolk County District Court did not appear in this action and a notation of default was issued as to that defendant on August 17, 2016. (DE [11].)

      On June 22, 2018, Plaintiff filed the within motion for summary judgment. (DE [45]). Shortly thereafter, the Finleys filed for bankruptcy, resulting in an automatic stay of this action. (DE [50]-[51].) In August 2019, the Finleys' bankruptcy proceedings concluded and the automatic stay was lifted, (DE [55]), at which time Judge Spatt reinstated Plaintiff's summary judgment motion and referred it to this Court for a recommendation as to whether the motion

1

should be granted and, if so, to determine what relief, if any, to be awarded. (DE [58].) For the following reasons, this Court respectfully recommends that Plaintiff's motion for summary judgment be granted and that Plaintiff be awarded damages as set forth herein.

## BACKGROUND

The relevant facts, as set forth below, are taken from the parties' Local Civil Rule 56.1 Statements of undisputed material facts. As an initial matter, the Court notes that while the Finleys filed a counter-statement, as required by Local Civil Rule 56.1(b), prior to briefing the motion, as required by Judge Spatt's Individual Rules, the counter-statement repeatedly states that the Finleys "do not have sufficient information to either admit or deny" Plaintiff's statements, rendering it largely unhelpful to the Court. (DE [39].) Moreover, the Finleys have failed to file any opposition to the within motion for summary judgment.

"Where facts stated in a party's 56.1 statement are supported by testimonial or documentary evidence, and denied only with a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true." Capak v. Epps, No. 18-CV-4325, 2020 WL 3073210, at *1 n.1 (S.D.N.Y. June 10, 2020). Moreover, pursuant to the Local Civil Rules for the Eastern District of New York, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1 (c); see also Local Civ. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). The Finley's counter-

statement fails to comply with the foregoing rules. Accordingly, the statements of material fact set forth in Plaintiff's Rule 56.1 Statement are deemed true. See Luizzi v. Pro Transport Inc., No. 02 CV 5388, 2009 WL 252076, at * 2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

On December 19, 2003, Defendants James and Kathleen Finley obtained a mortgage loan from IndyMac Bank, F.S.B. in the original principal amount of $203,000.00, memorialized in a note (the "Note") and secured by a mortgage (the "Mortgage") on the Property, recorded in the Suffolk County Clerk's Office on March 16, 2004. (Pl. Local Civ. R. 56.1 Stmt. ("Pl. 56.1") ¶ 3.) The Note contains an allonge endorsed to Plaintiff. (Id. ¶ 4.) The Mortgage was subsequently assigned to OneWest FSB, of which Plaintiff is the successor. (Id. ¶ 4.)

While the Finleys made payments under the Mortgage for a number of years, they failed to make the payment due December 1, 2015 and all subsequent payments thereafter. (Id. ¶ 5.) In compliance with Section 1304 of the New York Real Property Actions and Proceedings Law (the "RPAPL"), a ninety-day pre-foreclosure notice ("90 Day Notice") was sent to the Finleys on February 10, 2016 via first class and certified mail to the Property address and listed at least five housing counseling agencies. (Id. ¶ 6.) Within three business days of mailing the 90 Day Notice, Plaintiff filed notice with the Superintendent of Financial Services on February 11, 2016, as required by the RPAPL, and confirmation number NYS3958647 was issued. (Id. ¶ 7.)

A Notice of Default dated February 10, 2016 was also sent to the Finleys via first class mail to the Property address. (Id. ¶ 8.) Based on the default, Plaintiff elected to call due the

3

entire unpaid principal balance, plus interest and disbursements, including reasonable attorney's fees and costs, allowable under the terms of the Note and the Mortgage. (Id. ¶ 9.) To date, the Finley's mortgage loan remains in default. (Id. ¶ 10.)

Plaintiff initially filed for summary judgment on December 20, 2016. (DE [14].) Defendants failed to oppose the motion and, on December 21, 2016, Judge Spatt referred the motion to this Court for a report and recommendation. (DE [19].) This Court secured counsel for the Finleys for the limited purpose of participating in settlement negotiations and the parties attempted to work together towards obtaining a loan modification for the Finleys. (DE [30].) Plaintiff withdrew its then-pending summary judgment motion. (DE [31]-[32].) The Finleys' request for a loan modification was ultimately denied and Plaintiff requested that it be permitted to refile its motion for summary judgment. (DE [38], [41].)

Plaintiff thereafter filed the within motion for summary judgment, seeking to recover a total of $174,050.58 in damages, which includes: (1) $139,751.50 in unpaid principal; (2) $14,324.64 in interest from November 1, 2015 to November 1, 2017, at a rate of 5.125%, as specified in the Note; (3) $356.07 in late charges; and (4) $67,107.13 in disbursements. (Ray Aff. ¶ 10 (DE [46-1]), annexed to Rosenfeld Aff. (DE [46]) at Ex. A; Rosenfeld Aff., Ex. Q (DE [46-17]).) While the total damages sought actually amounts to $221,539.34, Plaintiff has applied credits to the Finleys in the amount of $47,488.76, which reduces the damages sought to $174,050.58. (Rosenfeld Aff., Ex. Q.) Plaintiff further seeks entry of a Judgment of Foreclosure and Sale and appointment of a referee to effectuate the sale of the Property, pursuant to the terms of a proposed form of judgment. (Rosenfeld Aff. ¶ 18 and Ex. R, annexed thereto (DE [46-18]).) Finally, Plaintiff seeks attorney's fees in the amount of $6,670.00 and costs in the amount of $1,315.69. (Rosenfeld Aff., Ex. P (DE [46-16]), Ex. Q.)

DISCUSSION

I.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at

5

trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.     Mortgage Foreclosure

Pursuant to New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate "the existence of the mortgage, ownership of the mortgage, and the defendant's default in payment on the loan [secured by the mortgage]." OneWest Bank, N.A. v. Hawkins, No. 14-cv-4656, 2015 WL 5706945, at *5 (E.D.N.Y. Sept. 2, 2015) (citing Campaign v. Barba, 805 N.Y.S.2d 86 (2d Dep't 2005)). Thus, once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has established a prima facie entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence. See BH99 Realty, LLC v. Li, No. 10-cv-693, 2011 WL 1841530, at *5 (E.D.N.Y. Mar. 6, 2011); see also U.S. v. Watts, No. 13-cv-3211, 2014 WL 4275628, at *3 (E.D.N.Y. May 28, 2014) ("[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.").

Here, the allegations in the Complaint, as well as the documentary evidence submitted in support of Plaintiff's instant motion, establish that Plaintiff is entitled to summary judgment with respect to its claim to foreclose upon the Finleys' Mortgage. Plaintiff has produced copies of the Mortgage and Note, thereby establishing the Finleys' obligations arising thereunder. (Rosenfeld Aff., Ex. C (DE [46-3]).) Plaintiff has also established that Defendant defaulted on December 1, 2015, failed to cure their default despite Plaintiff's proper demands for full payment of all outstanding principal and interest, and as of November 1, 2017, owed Plaintiff a total of $154,076.14 in outstanding principal and interest due on the Note. (Ray Aff. ¶ 10.) Because the

6

Finleys failed to oppose the within motion, they have failed to rebut Plaintiff's prima facie showing that it is entitled to summary judgment.

Accordingly, this Court respectfully recommends that Plaintiff's motion for summary judgment with respect to its claim to foreclose upon the Finleys' Mortgage be granted.

III.     Damages

Plaintiff seeks a total of $174,050.58 in damages, which includes, after applicable credits to the Finleys: (1) $139,751.50 in unpaid principal; (2) $14,324.64 in interest through November 1, 2017; (3) $356.07 in late charges; (4) $67,107.13 in disbursements; and, (4) $6,670.00 in attorney's fees. (Nardolillo Decl., Ex. H.) Plaintiff also seeks entry of a Judgment of Foreclosure and Sale permitting Plaintiff to foreclose upon and sell the Property at auction. (Rosenfeld Aff., Exs. P, Q.)

A.     The Outstanding Amount Due Under the Note

Plaintiff seeks to recover a total of $174,050.58, after credits to the Finleys are taken into account, for the outstanding amount due under the Note, which is comprised of: (1) $139,751.50 in unpaid principal; (2) $14,324.64 in interest, accrued at an annual rate of 5.125% from November 1, 2015 through November 1, 2017; (3) $356.07 in late charges; and, (4) $67,107.13 in disbursements. (Rosenfeld Aff., Ex. Q)

i.     Principal

Pursuant to the terms of the Note, Defendant promised to pay Plaintiff a total of $203,000 in principal, plus interest. (Note at 1.) Plaintiff submitted documentation asserting that, at the time of Defendant's default under the Note on December 1, 2015, the Note had an unpaid principal balance of $139,751.50. (Compl. ¶¶ 13-14; Rosenfeld Aff., Ex. A ¶ 10.) Plaintiff's allegations and documentation further establish that after Defendant's initial default,

7

Defendant did not make any further payments to reduce the outstanding principal balance. (Rosenfeld Aff., Ex. A ¶ 12.)

Accordingly, this Court recommends that Plaintiff be awarded $139,751.50 in unpaid principal due and owing under the Note.

      ii.    <u>Interest</u>

The Note further provides that, both before and after default, interest accrues on the outstanding principal balance at an interest rate of 5.125% per annum. (Compl. ¶ 14; Note at 1.) Plaintiff's allegations establish that Defendant's first missed payment occurred on December 1, 2015, which would have included interest accrued beginning on November 1, 2015. (Compl. ¶¶ 13-14; Rosenfeld Aff., Ex. Q.) Applying the Note's 5.125% interest rate to the $139,751.50 in outstanding principal, interest accrues at a rate of $19.62 per day.[1] Plaintiff requests $14,324.64 in interest from November 1, 2015 through November 1, 2017. As of the date of this Report and Recommendation, since November 1, 2017, Defendant has failed to pay an additional 972 days' worth of accrued interest.

Accordingly, this Court recommends that Plaintiff be awarded the interest requested of $14,324.64 through November 1, 2017. This Court further recommends that Plaintiff be awarded $19,070.64 in unpaid interest through the date of this Report and Recommendation, for a total interest award thus far of $33,395.28. In addition, this Court recommends that Plaintiff be awarded $19.62 in per diem interest until the date on which judgment is entered. See <u>Eastern Sav. Bank, FSB v. McLaughlin</u>, No. 13-cv-1108, 2015 WL 5657355, at *55 (E.D.N.Y. Aug. 17, 2015) (recommending award of per diem interest in action for judgment of foreclosure and sale).

---

[1] The daily rate is calculated by multiplying the unpaid principal balance by the annual interest rate divided by 365 days.

Additionally, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. See 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); see also Schipani v.McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); Builders Bank v. Northern Funding, LLC, No. 08-cv-3575, 2012 WL 4928854, at *1 (E.D.N.Y. Oct. 16, 2012) (awarding post-judgment interest at the federal rate in action for judgment of foreclosure and sale).

C       Other Costs

Plaintiff also seeks a total of $67,463.20 in other costs, which include: (1) $356.07 in pre-acceleration late charge; (2) $8,909.00 in hazard insurance disbursements; (3) $56,508.13 in tax disbursements; (4) $440.00 in property inspections/preservation; and, (5) $1,250.00 in "BPO," which Plaintiff fails to define. (Rosenfeld Aff., Ex. Q.) While Plaintiff asserts that the Note and the Mortgage permit Plaintiff to advance additional monies for the payment of taxes, insurance and the maintenance of the premises in order to protect its security interest, (Compl. ¶ 15; Rosenfeld Aff., Ex. A ¶ 11), Plaintiff has failed to submit any documents supporting an explanation for the amounts claimed to have been expended. Therefore, Plaintiff has failed to show a "reasonable inference" evidencing the requested amounts. See Au Bon Pain Corp., 653 F.2d at 65.

Accordingly, this Court recommends that Plaintiff's request for damages relating to pre-acceleration late charges, hazard insurance disbursements, tax disbursements, property inspections/preservation and "BPO" be denied.

IV.     Attorney's Fees and Costs

   A.     Attorney's Fees

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)).  The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original).  "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours).  This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiff seeks to recover $6,670.00 in attorney's fees and has submitted an Attorney Fee Affirmation from Steven Rosenfeld, Esq., dated June 21, 2018. (Rosenfeld Aff., Ex. P.) The Attorney Fee Affirmation provides a schedule outlining the attorney's fees associated with this action and sets forth a description of the tasks performed, the dates on which those tasks were performed, and the amount of time spent on each individual task. (Rosenfeld Aff., Ex. P ¶¶ 3-5.) Because Plaintiff's counsel is charging a flat fee for representation in this action, individual billing records are not maintained. (Id. ¶ 4.)

The Court finds the hours expended and the fees charged to be reasonable. Accordingly, this Court respectfully recommends that Plaintiff be awarded $6,670.00 in attorney's fees.

    B.    <u>Costs</u>

Plaintiff also seeks a total of $1,315.69 in costs and disbursements in connection with the instant action. (Rosenfeld Aff., Ex. Q.) These costs are comprised of: (1) the $400.00

11

filing fee; (2) $395.69 for searches; (3) $280.00 for service of the Summons and Complaint; (4) $220.00 in fees for filing the Notice of Pendency; and, (5) $20.00 for postage.

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested."  Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)).

Here, Plaintiff has failed to submit sufficient invoices, receipts, or other documentary proof of the costs and disbursements it seeks to recover.  Rather, the costs are simply itemized in Plaintiff's Statement of Damages, with no documentary evidence attached to support a finding that they were actually charged to the client.  (Rosenfeld Aff., Ex. Q.)  While the Court can take judicial notice of the filing fees charged by the Court for commencing this action and for filing the Notice of Pendency, there is nothing offered to support the remaining costs requested.

Accordingly, this Court respectfully recommends that Plaintiff's request for costs and disbursements be granted only with respect to the $620.00 sought in court filing fees and denied in all other respects.

IV.     Judgment of Foreclosure and Sale and Appointment of Referee

Plaintiff further seeks a judgment of foreclosure and sale and appointment of a referee.  A plaintiff is entitled to foreclose upon and sell a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation."  OneWest Bank N.A. v. Cole, No. 14-cv-3078, 2015 WL 4429014, at *1 (E.D.N.Y. July 17, 2015) (authorizing foreclosure and sale of property upon entry of default judgment).  Further, courts routinely

appoint referees to effectuate the sale of foreclosed properties." See, e.g., PMP Tech. Servs., LLC v. Mazoureix, No. 14-cv-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sept. 23, 2015) (awarding a judgment of foreclosure and sale under the supervision of a referee); Eastern Sav. Bank v. Evancie, No. 13-cv-878, 2014 WL 1515643, at *1 (E.D.N.Y. Apr. 18, 2014) (same).

Having determined that Plaintiff has established its presumptive right to foreclose upon the Property due to the Finley's default on the Note, this Court recommends appointing a referee to effectuate the foreclosure and sale of the Property. This Court further recommends that the proceeds of the sale be applied to the total amount owed on the Note as set forth above. See OneWest Bank, N.A. v. Denham, No. cv 14-5529, 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (recommending that the relevant property be foreclosed upon and sold with the proceeds being applied to the outstanding amount owed on the note).

V.  Default Judgment Against the Clerk of the Suffolk County District Court

Plaintiff's motion for summary judgment also seeks the entry of a default judgment against Defendant Clerk of the Suffolk County District Court (the "Suffolk County Clerk"), which is the holder of a lien encumbering the Property that is subordinate to Plaintiff's Mortgage. (Compl. ¶¶ 5-6.) Plaintiff seeks to have the Suffolk County Clerk's lien extinguished.

While Plaintiff fails to brief the default judgment it seeks to obtain, focusing solely on the mortgage foreclosure, it is clear from the docket sheet that the Suffolk County Clerk was served with a copy of the Summons and Complaint on July 7, 2016. (DE [7].) The Suffolk County Clerk failed to answer or otherwise appear in this action and a Clerk's Entry of Default was entered against the Suffolk County Clerk on August 17, 2016. (DE [11].) Having satisfied the two prerequisites to obtaining a default judgment – a certificate of default from the Clerk of the

Court and filing for entry of a default judgment - this Court finds that Plaintiff is entitled to the default judgment it seeks. See Fed. R. Civ. P. 55(a); Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011).

Accordingly, this Court recommends that Plaintiff's motion for summary judgment, to the extent it seeks entry of a default judgment against the Suffolk County Clerk, be granted and that any lien on the Property asserted by the Suffolk County Clerk be extinguished.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for summary judgment be granted and that Plaintiff be awarded damages as follows: (1) $139,751.50 in unpaid principal under the Note; (2) $33,395.28 in interest accrued through the date of this Report and Recommendation, with additional per diem interest to be calculated at a rate of $19.62 per day through the date that judgment is entered; and, (3) post-judgment interest, to be calculated by the Clerk of the Court, pursuant to 28 U.S.C. § 1961(a). The Court further recommends that Plaintiff be awarded $6,670.00 in attorney's fees and $620.00 in costs and disbursements. In addition, the Court recommends that an Order similar to Plaintiff's proposed Judgement of Foreclosure and Sale, but consistent with the instant Report and Recommendation, be entered and that a referee be appointed to effectuate the sale of the Property. Finally, the Court recommends that Plaintiff be granted a default judgment with respect to the defaulting Defendant, the Clerk of the Suffolk County District Court, and that any lien on the Property asserted by the Clerk of the Suffolk County District Court be extinguished.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Plaintiff's counsel to serve a copy of this Report and

Recommendation by overnight mail and first-class mail to Defendants at their last known addresses and to file proof of service on ECF by July 3, 2020.  Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
          June 30, 2020

                                                /s/ Anne Y. Shields
                                                ANNE Y. SHIELDS
                                                United States Magistrate Judge